Action by the Comptograph Company against Edward B. Schmalholz, doing business under the name of Theodore B. Schmalholz & Son. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued October term, 1914, before SEABURY, BIJUR, and COHALAN, JJ.

Edward H. Hawke, Jr., of New York City (Herbert R. Limburg, of New York City, of counsel), for appellant.

Charles Kaufmann, of New York City (Joseph J. Corn, of New York City, and J. Lester Lewine, of Fleischmanns, of counsel), for respondent.

COHALAN, J. Plaintiff sues to recover the purchase price of a second hand adding machine. The alleged sale, evidenced by a written agreement, was made through one Seymour, a bookkeeper of the defendant. This employé had been discharged by the defendant, and testified on the trial of the action that the machine, concededly on trial in the defendant's place of business, was bought by the defendant. The defendant claims that the employé had no express or apparent authority to bind him to such a contract.

The weight of the evidence seems to sustain the defendant's contention. It shows that the business was not placed in Seymour's charge, but that one Smith was the business manager thereof; that the defendant was in his place of business every day, and was there at the precise time when the agreement was signed by Seymour. Moreover, the plaintiff was informed by Seymour that the express consent of the defendant would have been necessary to purchase the machine. Under these circumstances the plaintiff dealt with the bookkeeper at its peril. People v. Brooklyn Cooperage Co., 187 N. Y. 142, 79 N. E. 866; Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827. It is significant, too, that the written agreement was never shown to the defendant, and that it was not found until after the discharge of Seymour, when a prompt demand was made upon the plaintiff to remove the machine.

Judgment reversed, and new trial ordered; costs to appellant to abide the event. All concur.

---

(164 App. Div. 711)

KNOWLES v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. November 13, 1914.)

1. COMMERCE (§ 27*)—REGULATION OF RAILROADS—DEATH OF SERVANT—EMPLOYERS' LIABILITY ACT.

Where decedent, a switchman, was regularly assigned to a switch locomotive in defendant's yard, and was killed while crossing the tracks in the yard on his way to work, his administratrix, to establish liability under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), was bound to prove that intestate, when killed, was engaged in interstate commerce, in the sense that the work which he was on his way to do was of that character, which she could do, either by proving that the switch engine on which he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was employed was used exclusively during that shift in interstate commerce, or that it was thus used at the very outset of the shift.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. MASTER AND SERVANT (§ 276*)—DEATH OF SERVANT—INTERSTATE COMMERCE—EVIDENCE.

In an action for death of plaintiff's intestate, regularly assigned to a switch engine in defendant's yard, by being struck at a crossing as he was going to work, evidence *held* insufficient to show that the engine at the very outset of the shift, or during the shift, was engaged in interstate commerce.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

Appeal from Trial Term, Westchester County.

Action by Grace Knowles, as administratrix of Charles E. Knowles, deceased, against the New York, New Haven & Hartford Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and CARR, RICH, STAPLETON, and PUTNAM, JJ.

J. W. Carpenter, of Brooklyn, for appellant.

Thomas J. O'Neill, of New York City, for respondent.

JENKS, P. J. [1] The plaintiff was bound to establish that the work done by her intestate at the time he was killed was that of interstate commerce. Ill. Cent. R. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Pedersen v. Del., Lack. & West. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Shanks v. Delaware, L. & W. R. Co., 163 App. Div. 565, 148 N. Y. Supp. 1034. As the intestate was killed while crossing the tracks in the defendant's yard on his way to his work, which was to begin a few minutes thereafter, the case of the plaintiff is necessarily that her intestate was engaged in interstate commerce, in the sense that the work which he was on his way to do was of that character. See Nor. Car. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. The intestate was assigned regularly to a switch locomotive engine used in the yard of the defendant. The proof shows that it was used indiscriminately in interstate and intrastate commerce within the meaning of the decisions. Hence the plaintiff was bound to establish, either that this switch locomotive was used exclusively during that shift, which began at midnight and ended at 8 a. m., in interstate commerce, or that it was thus used at the very outset of the shift.

[2] I think that she did not make out her case. The witness Regan, an employé of the defendant, called by the plaintiff, testifies without contradiction that there was no proof of any kind available that could show all of the uses of this switch engine in defendant's work. It is true that the "switching tissues," which are record calls for certain work, indicate that this locomotive engine was used in interstate com-

merce during the shift, and perhaps do not indicate use for intrastate commerce during that time; but there is also proof that such switching tissues did not cover all of the ordinary uses of such an engine, but simply outside work—outside of the central yard proper. I have said already that the proof is that there is no record or proof available to show what other uses may have been made of this engine. And there is proof that the engine on such shift was used always to make up a certain regular local freight train. Even if the switching tissues indicate that this engine was used in interstate commerce during this shift, they, as I read them, do not permit the inference that such use was made at the beginning of the shift. Indeed, some of the tissue records seem to refer to a use made some hours after midnight. There is no presumption to aid the plaintiff, and as her proof, as I read it, does not warrant the conclusion that either the exclusive use or the initial use of this locomotive engine on this occasion was in interstate commerce, I think that there must be a new trial. I suggest that, when such a question as the one now discussed is presented, it would be well for the learned court, in case the proof justifies a submission to the jury of the question of the character of the work, to direct the attention of the jury specifically to that issue.

I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur.